

FILED
IN OPEN COURT

MAY 1 5 2008

CLERK, U.S. DISTRICT COURT
ALEXANDRIA, VIRGINIA

# IN THE UNITED STATES DISTRICT COURT

# FOR THE EASTERN DISTRICT OF VIRGINIA

## Alexandria Division

| | |
|---|---|
| UNITED STATES OF AMERICA ) | CRIMINAL NO. 1:08cr194 |
| ) | |
| v.                      ) | Count 1:  18 U.S.C. §§ 1959(a)(1) and 2 |
| )                       | (Murder in Aid of Racketeering Activity) |
| OSCAR OMAR LOBO-LOPEZ,   ) | |
| also known as "Joker"   ) | Count 2: 18 U.S.C. § 924(c)(1)(A) and (j) |
| )                       | (Use of A Firearm During A Crime of |
| )                       | Violence) |

### MAY 2008 TERM - at Alexandria

### INDICTMENT

### COUNT ONE

### (Murder in Aid of Racketeering Activity)

THE GRAND JURY CHARGES THAT:

### The Enterprise

At all times relevant to this Indictment:

1.      The defendant, OSCAR OMAR LOBO -LOPEZ, also known as "Joker," was a member and associate of a criminal organization, specifically, Mara Salvatrucha, also known as MS-13.  MS-13 was a violent gang involved in a variety of criminal activities including auto thefts, threats, witness intimidation, aggravated assault, and murder — in the Eastern District of Virginia and elsewhere.

2.      MS-13 operated in the Eastern District of Virginia since approximately 1993. MS-13 had members and associates spread throughout the United States in, among other places, Virginia, Maryland, Washington, D.C., North Carolina, Texas, and California, as well as in

Central America, including El Salvador. MS-13 recruited predominantly from the Hispanic community and typically among juveniles. Recruits were "jumped" into the gang by being physically beaten by members while a member counted to 13. MS-13 gang members typically tattooed their bodies to identify their membership in, and allegiance to, MS-13, although some members deliberately avoided such tattoos in an effort to avoid detection by law enforcement. MS-13 gang tattoos typically included large block "M" and "S" letters, the number "13," the member's clique, and the MS-13 hand sign which represented both an inverted "M" and the face of the devil with outstretched fingers representing the devil's horns. The tattoos were commonly located on members' shoulders, chest, back and sometimes were placed on their necks, chins, foreheads, and knuckles.

3.      New recruits were indoctrinated into MS-13 rules, which were ruthlessly enforced. One prominent rule encouraged MS-13 gang members to confront, fight, and kill rival gang members, known as "chavalas." Unreasonable refusal to confront and fight "chavalas" was punishable by beatings, and, potentially, death.

4.      A prominent MS-13 rule commanded silence about gang activity and forbade cooperation with law enforcement. The sanction for violating the code of silence was a "green light." A "green light" was a signal that the gang had approved the killing of someone suspected of cooperating with law enforcement. The killing of those who cooperated with the government and provided information to law enforcement served as a clear warning to others who might consider informing on MS-13.

5.      MS-13 required its members to support its leadership, including support for decisions by leadership about gang activities and about how and where dues collected from the

2

membership should be spent.

6.     The MS-13 gang was broken into cliques that held regular individual meetings and sent leaders to larger regional, or general, meetings to maintain control and resolve problems within the gang. MS-13 meetings typically occurred within hotel rooms or parks in the Eastern District of Virginia and elsewhere.

7.     MS-13, including its leadership, membership, and associates, constituted an enterprise as defined in Title 18, United States Code, Section 1959(b)(2), that is, a group of individuals associated in fact that engaged in, and the activities of which affected, interstate and foreign commerce. The enterprise constituted an ongoing organization whose members functioned as a continuing unit for a common purpose of achieving the objectives of the enterprise.

## Objectives of the Enterprise

8.     The objectives of MS-13 included the following:

a.  Preserving, expanding, and protecting the power, territory, and prestige of MS-13 through the use of intimidation, violence, and threats of violence.

b.  Promoting and enhancing MS-13's and its members' and associates' activities.

c.  Keeping victims in fear of MS-13 and in fear of its members and associates through intimidation, violence, and threats of violence.

d.  Confronting and retaliating against rival gangs through the use of intimidation, violence, threats of violence, assaults, and murders.

e.  Financially supporting members of MS-13 who had been deported or imprisoned for gang-related activities.

## Means and Methods of the Enterprise

9.      Among the means and methods by which the defendant and his associates conducted and participated in the conduct of the affairs of MS-13 were the following:

a.  Members of MS-13 and their associates used intimidation, violence, and threats of violence, including murder and assault, to preserve, expand, and protect the enterprise's territory and activities.

b.  Members of MS-13 and their associates used intimidation, violence, and threats of violence, including murder and assault, to promote and enhance its prestige, reputation, and position in the community.

c.  Members of MS-13 and their associates promoted a climate of fear through intimidation, violence, and threats of violence.

d.  Members of MS-13 and their associates used intimidation, violence, and threats of violence, including murder and assault, against various individuals, including known and suspected members of rival gangs.

e.  Members of MS-13 used intimidation, violence, and threats of violence, including murder and assault, to discipline enterprise members and associates who had violated enterprise rules.

f.  Members of MS-13 used intimidation, violence, and threats of violence, including murder and assault, to punish enterprise members and associates who had been disloyal.

g.  Members of MS-13 stole vehicles and transported them in interstate commerce to attend and promote enterprise activities.

h. Members of MS-13 traveled throughout the United States, Mexico, and Central America to attend and promote enterprise activities.

i. Members of MS-13 collected dues to send to fellow gang members who were incarcerated, who were deported, or who were in need of money.

10.     MS-13, through its members and associates, engaged in racketeering activity as defined in Title 18, United States Code, Sections 1959(b)(1) and 1961(1), namely, acts involving murder, in violation of laws of the Commonwealth of Virginia, and acts indictable under Sections 1503 (obstruction of justice), 1512 (witness tampering), 1513 (witness retaliation), 1951 (interference with commerce by extortion), and 2312 (interstate transportation of stolen vehicles) of Title 18, United States Code, as well as acts indictable under Section 841 (trafficking in controlled substances) of Title 21, United States Code.

11.     On or about May 5, 2007, in Fairfax County, Virginia, in the Eastern District of Virginia, for the purpose of maintaining and increasing position in MS-13, an enterprise engaged in racketeering activity, OSCAR OMAR LOBO-LOPEZ, also known as "Joker," the defendant, unlawfully and knowingly murdered Melvin Reyes, also known as "Pelon," in violation of the laws of the Commonwealth of Virginia, specifically, Va. Code Ann. § 18.2-32; and did aid, abet, and assist in the commission of said offense.

(In violation of Title 18, United States Code, Sections 1959(a)(1) and 2.)

<u>COUNT TWO</u>

(Use of Firearm During and in Relation to Crime of Violence)

THE GRAND JURY FURTHER CHARGES THAT:

On or about May 5, 2007, in Fairfax County, Virginia, within the Eastern District of Virginia and elsewhere, the defendant, OSCAR OMAR LOBO-LOPEZ, also known as "Joker," did unlawfully and knowingly carry, use, brandish, and discharge a firearm, specifically a handgun, during and in relation to a crime of violence for which he may be prosecuted in a court of the United States, specifically, murder in aid of racketeering activity, in violation of Title 18, United States Code, Section 1959(a)(1), as set forth and charged in Count One of this Indictment, which is re-alleged and incorporated by reference herein; and caused the death of Melvin Reyes, also known as "Pelon," through the use of the firearm, which killing was murder, as defined in 18 U.S.C. § 1111, in that the defendant, with malice aforethought did unlawfully kill Melvin Reyes by shooting him with the firearm; and did aid, abet, and assist in the commission of said offense.

(In violation of Title 18, United States Code, Sections, 924(c)(1)(A) and (j), and 2.)

6

## NOTICE OF SPECIAL FINDINGS

The defendant, OSCAR OMAR LOBO-LOPEZ, also known as "Joker":

    a. was 18 years of age or older at the time of the offenses;

    b. intentionally killed Melvin Reyes (Title 18, United States Code, Section 3591(a)(2)(A));

    c. intentionally inflicted serious bodily injury that resulted in the death of Melvin Reyes (Title 18, United States Code, Section 3591(a)(2)(B));

    d. intentionally participated in one or more acts, contemplating that the life of a person would be taken or intending that lethal force would be used in connection with a person, other than a participant in the offense, and Melvin Reyes died as a direct result of such act or acts (Title 18, United States Code, Section 3591(a)(2)(C));

    e. intentionally and specifically engaged in one or more acts of violence, knowing that the act or acts created a grave risk of death to a person, other than one of the participants in the offense, such that participation in such acts constituted a reckless disregard for human life, and Melvin Reyes died as a direct result of such act or acts (Title 18, United States Code, Section 3591(a)(2)(D);

    f. committed the offense after substantial planning and premeditation to cause the death of Melvin Reyes (Title 18, United States Code, Section 3592(c)(9));

    g. in the commission of the offense, knowingly created a grave risk of death to one or more persons in addition to the victim of the offense (Title 18, United States Code, Section 3592(c)(5)).

A TRUE BILL Pursuant to the E-Government Act,
the original of this page has been filed
under seal in the Clerk's Office.

_____
Foreperson

Chuck Rosenberg
United States Attorney

Morris R. Parker, Jr.
Assistant United States Attorney

Patricia T. Giles
Assistant United States Attorney

8