IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CRIMINAL NO. 1:08CR194 |
| | ) | |
| OSCAR OMAR LOBO-LOPEZ, | ) | Trial Date: April 14, 2009 |
| | ) | Hon. T.S. Ellis, III |
| Defendant. | ) | |

GOVERNMENT'S PROPOSED JURY INSTRUCTIONS

The Government respectfully requests the Court to include in its charge to the Jury the

following general instructions found in O'Malley, Grenig and Lee, Federal Jury Practice and

Instructions (5th ed. 2000 Volume IA),  General Instructions for Federal Criminal Cases.

Requested Jury Instructions

Section 11.03 - Objections and Rulings.

Section 11.04 - Court's Comments to Counsel.

Section 11.05 - Court's Questions To Witnesses.

Section 11.06 - Court's Comments on Certain Evidence.

Section 12.01 - Introduction to the Final Charge -- Province of  he Court and of the Jury.

Section 12.02 - Judging the Evidence.

Section 12.03 - Evidence Received in the Case - Stipulations, Judicial Notice, and Inferences
            Permitted.

Section 12.04 - Direct and Circumstantial Evidence.

Section 12.05 - Inferences From the Evidence.

Section 12.07 - Jury's Recollection Controls.

Section 12.08 - The Question Is Not Evidence.

Section 12.09 - Consider Only the Offense Charged.

Section 12.13 - Consider Each Count Separately.

Section 13.04 - The Indictment is Not Evidence.

Section 13.05 - "On or About" -- Explained.

Section 13.07 - Unanimity -- Explained.

Section 14.01 - Opinion Evidence - The Expert Witness.

Section 14.16 - Number of Witnesses Called is Not Controlling.

Section 15.01 - Credibility of Witnesses - Generally.

Section 15.07 - Credibility of Witnesses - Conviction of Felony.

Section 15.12 - Credibility of Witnesses - The Defendant as a Witness.  (if appropriate)

Section 15.14 - Effect of the Defendant's Failure to Testify.  (if appropriate)

Section 17.04 - "Knowingly" -- Defined.

Section 17.05 - "Willfully" -- Defined.

Section 17.07 - Proof of Knowledge or Intent.

Section 20.01 - Verdict - Election of Foreperson - Duty to Deliberate - Unanimity - Punishment - Form of  Verdict - Communication with the Court.

Section 20.04 - Exhibits During Deliberations.   (if appropriate)

The Government also respectfully requests the Court to include in its charge to the Jury the attached special instructions and such other instructions as may become appropriate during the course of the trial.

Respectfully submitted,

Dana J. Boente
Acting United States Attorney

By:             /s/
             Morris R. Parker, Jr.
             Assistant United States Attorney
             Office of United States Attorney
             Justin W. Williams U.S. Attorney's Building
             2100 Jamieson Ave
             Alexandria, VA 22314
             Phone: 703-299-3700
             Fax: 703-299-3982
             E-mail address:  morris.parker@usdoj.gov


             /s/
             Patricia T. Giles
             Assistant United States Attorney
             Office of United States Attorney
             Justin W. Williams U.S. Attorney's Building
             2100 Jamieson Ave
             Alexandria, VA 22314
             Phone: 703-299-3700
             Fax: 703-299-3982
             E-mail address: patricia.giles@usdoj.gov


             /s/
             Zachary C. Richter
             Special Assistant United States Attorney
             Office of United States Attorney
             Justin W. Williams U.S. Attorney's Building
             2100 Jamieson Ave
             Alexandria, VA 22314
             Phone: 703-299-3700
             Fax: 703-549-7201
             E-mail address: zachary.richter@usdoj.gov

CERTIFICATE OF SERVICE

I certify that on the 9th day of April 2009, I electronically filed the foregoing

Government's Proposed Jury Instructions with the Clerk of Court using the CM/ECF system,

which will send a notification of such filing (NEF) to the following:

Lana M. Manitta, Esq.                         John C. Kiyonaga, Esquire
Counsel for Defendant Oscar Lobo Lopez        Counsel for Defendant Oscar Lobo Lopez
201 N. Union Street, Suite 140                526 King Street, Suite 213
Alexandria, VA 22314                          Alexandria, VA 22314
(703) 299-3441                                (703) 739-0009
Fax: (703) 299-3441                           Fax: (703) 836-0045
E-mail: LMManitta@RRMDK.com                   E-mail: jkiyonaga@earthlink.net

GOVERNMENT'S PROPOSED JURY INSTRUCTION NO.  1
(If Instructed)

Burden of Proof - Reasonable Doubt

The law presumes a defendant to be innocent of crime.  Thus, a defendant, although

accused, begins the trial with a "clean slate" -- with no evidence against him.  And the law

permits nothing but legal evidence presented before the jury to be considered in support of any

charge against the accused.  So the presumption of innocence alone is sufficient to acquit a

defendant, unless the jurors are satisfied beyond a reasonable doubt of the defendant's guilt after

careful and impartial consideration of all the evidence in the case.

It is not required that the government prove guilt beyond all possible doubt.  The test is

one of reasonable doubt.

The jury will remember that a defendant is never to be convicted on mere suspicion or

conjecture.

The burden is always upon the prosecution to prove guilt beyond a reasonable doubt.

This burden never shifts to a defendant, for the law never imposes upon a defendant in a criminal

case the burden or duty of calling any witnesses or producing any evidence.

So if the jury, after careful and impartial consideration of all the evidence in the case, has

a reasonable doubt that a defendant is guilty of the charge, it must acquit.

(1 Devitt and Blackmar, Federal Jury Practice and Instructions, § 12.10 (4th ed. 1992); *Victor v. Nebraska*, 511 U.S. 11 (1994); *United States v. Guay*, 108 F.3d 545, 550 (4th Cir.1997); *United States v. Oriakhi*, 57 F.3d 1290, 1300-01 (4th Cir. 1995); *United States v. Reives*, 15 F.3d 42 (4th Cir.1994)).

GOVERNMENT'S PROPOSED JURY INSTRUCTION NO.  2

The Nature of the Offense Charged - Count One

Count One of the Superseding Indictment charges that at all times relevant to this Superseding Indictment:

1.      The defendant, OSCAR OMAR LOBO-LOPEZ, also known as "Joker," was a member and associate of a criminal organization, specifically, Mara Salvatrucha, also known as MS-13.  MS-13 was a violent gang involved in a variety of criminal activities including auto thefts, threats, witness intimidation, aggravated assault, and murder — in the Eastern District of Virginia and elsewhere.

2.      MS-13 operated in the Eastern District of Virginia since approximately 1993. MS-13 had members and associates spread throughout the United States in, among other places, Virginia, Maryland, Washington, D.C., North Carolina, Texas, and California, as well as in Central America, including El Salvador.  MS-13 recruited predominantly from the Hispanic community and typically among juveniles.  Recruits were "jumped" into the gang by being physically beaten by members while a member counted to 13.  MS-13 gang members typically tattooed their bodies to identify their membership in, and allegiance to, MS-13, although some members deliberately avoided such tattoos in an effort to avoid detection by law enforcement. MS-13 gang tattoos typically included large block "M" and "S" letters, the number "13," the member's clique, and the MS-13 hand sign which represented both an inverted "M" and the face of the devil with outstretched fingers representing the devil's horns.  The tattoos were commonly located on members' shoulders, chest, back and sometimes were placed on their necks, chins, foreheads, and knuckles.

3.      New recruits were indoctrinated into MS-13 rules, which were ruthlessly enforced.  One prominent rule encouraged MS-13 gang members to confront, fight, and kill rival gang members, known as "chavalas."  Unreasonable refusal to confront and fight "chavalas" was punishable by beatings, and, potentially, death.

4.      A prominent MS-13 rule commanded silence about gang activity and forbade cooperation with law enforcement.  The sanction for violating the code of silence was a "green light."  A "green light" was a signal that the gang had approved the killing of someone suspected of cooperating with law enforcement.  The killing of those who cooperated with the government and provided information to law enforcement served as a clear warning to others who might consider informing on MS-13.

5.      MS-13 required its members to support its leadership, including support for decisions by leadership about gang activities and about how and where dues collected from the membership should be spent.

6.      The MS-13 gang was broken into cliques that held regular individual meetings and sent leaders to larger regional, or general, meetings to maintain control and resolve problems within the gang.  MS-13 meetings typically occurred within hotel rooms or parks in the Eastern District of Virginia and elsewhere.

7.      MS-13, including its leadership, membership, and associates, constituted an enterprise as defined in Title 18, United States Code, Section 1959(b)(2), that is, a group of individuals associated in fact that engaged in, and the activities of which affected, interstate and foreign commerce.  The enterprise constituted an ongoing organization whose members functioned as a continuing unit for a common purpose of achieving the objectives of the enterprise.

## Objectives of the Enterprise

8.     The objectives of MS-13 included the following:

a.  Preserving, expanding, and protecting the power, territory, and prestige of MS-13 through the use of intimidation, violence, and threats of violence.

b.  Promoting and enhancing MS-13's and its members' and associates' activities.

c.  Keeping victims in fear of MS-13 and in fear of its members and associates through intimidation, violence, and threats of violence.

d.  Confronting and retaliating against rival gangs through the use of intimidation, violence, threats of violence, assaults, and murders.

e.  Financially supporting members of MS-13 who had been deported or imprisoned for gang-related activities.

## Means and Methods of the Enterprise

9.     Among the means and methods by which the defendant and his associates conducted and participated in the conduct of the affairs of MS-13 were the following:

a.  Members of MS-13 and their associates used intimidation, violence, and threats of violence, including murder and assault, to preserve, expand, and protect the enterprise's territory and activities.

b.  Members of MS-13 and their associates used intimidation, violence, and threats of violence, including murder and assault, to promote and enhance its prestige, reputation, and position in the community.

c.  Members of MS-13 and their associates promoted a climate of fear through intimidation, violence, and threats of violence.

d.   Members of MS-13 and their associates used intimidation, violence, and threats of violence, including murder and assault, against various individuals, including known and suspected members of rival gangs.

e.   Members of MS-13 used intimidation, violence, and threats of violence, including murder and assault, to discipline enterprise members and associates who had violated enterprise rules.

f.   Members of MS-13 used intimidation, violence, and threats of violence, including murder and assault, to punish enterprise members and associates who had been disloyal.

g.   Members of MS-13 stole vehicles and transported them in interstate commerce to attend and promote enterprise activities.

h.   Members of MS-13 traveled throughout the United States, Mexico, and Central America to attend and promote enterprise activities.

i.   Members of MS-13 collected dues to send to fellow gang members  who were incarcerated, who were deported, or who were in need of money.

10.   MS-13, through its members and associates, engaged in racketeering activity as defined in Title 18, United States Code, Sections 1959(b)(1) and 1961(1), namely, acts involving murder, in violation of the laws of the Commonwealth of Virginia, and acts indictable under Sections 1503 (obstruction of justice), 1512 (witness tampering), 1513 (witness retaliation), 1951 (interference with commerce by extortion), and 2312 (interstate transportation of stolen vehicles) of Title 18, United States Code, as well as acts indictable under Section 841 (trafficking in controlled substances) of Title 21, United States Code.

11.     From in and around January 2007 through on or about May 5, 2007, in Fairfax County, Virginia, in the Eastern District of Virginia, for the purpose of maintaining and increasing position in MS-13, an enterprise engaged in racketeering activity, OSCAR OMAR LOBO-LOPEZ , the defendant, and Sergio Amador Amador unlawfully and knowingly conspired to murder Melvin Reyes, also known as "Pelon," in violation of the laws of the Commonwealth of Virginia, specifically, Va. Code Ann. §§ 18.2-22 and 18.2-32.

(In violation of Title 18, United States Code, Section 1959(a)(5).)

GOVERNMENT'S PROPOSED JURY INSTRUCTION NO.  3

The Nature of the Offense Charged - Count Two

Count Two of the Superseding Indictment charges that at all times relevant to this Superseding Indictment, and incorporating paragraphs 1 through 10 of Count One, that on or about May 5, 2007, in Fairfax County, Virginia, in the Eastern District of Virginia, for the purpose of maintaining and increasing position in MS-13, an enterprise engaged in racketeering activity, OSCAR OMAR LOBO-LOPEZ, also known as "Joker," the defendant, unlawfully and knowingly murdered Melvin Reyes, also known as "Pelon," in violation of the laws of the Commonwealth of Virginia, specifically, Va. Code Ann. § 18.2-32.

(In violation of Title 18, United States Code, Sections 2 and 1959(a)(1).)

GOVERNMENT'S PROPOSED JURY INSTRUCTION NO.  4

The Statute Defining the Offense Charged - Counts One and Two

Title 18, United States Code, Section 1959 provides, in pertinent part:

Whoever . . . for the purpose of gaining entrance to or maintaining or increasing position in an enterprise engaged in racketeering activity, murders, . . . or attempts or conspires so to do, shall be punished –

(Title 18, United States Code, Section 1959(a).)

GOVERNMENT'S PROPOSED JURY INSTRUCTION NO.  5

Essential Elements of the Offense – Count One

In Count One, the defendant, OSCAR OMAR LOBO-LOPEZ, has been charged with a violent crime, that is, with conspiracy to commit murder in aid of racketeering.  To find the defendant guilty of this charge, the government must prove five elements beyond a reasonable doubt:

One:    That on or about the date charged in Count One of the Superseding Indictment, an enterprise affecting interstate or foreign commerce existed;

Two:    That the enterprise was engaged in racketeering activity;

Three: That the defendant had a position in the enterprise;

Four:   That the defendant knowingly and unlawfully conspired together and/or with others to murder Melvin Reyes, a.k.a., "Pelon"; and

Five:   One of the purposes of defendant in doing so was to maintain or increase his position in the enterprise.

(United States v. Fiel, 35 F.3d 997, 1003 (4th Cir. 1994); United States v. Concepcion, 983 F.2d 369, 381 (2d Cir.1992); Title 18, United States Code, Section 1959(a) & (b).)

GOVERNMENT'S PROPOSED JURY INSTRUCTION NO.  6

Essential Elements of the Offense – Count Two

In Count Two, the defendant, OSCAR OMAR LOBO-LOPEZ, has been charged with a

violent crime, that is, with murder in aid of racketeering.  To find the defendant guilty of this

charge, the government must prove five elements beyond a reasonable doubt:

One:   That on or about the date charged in Count Two of the Superseding Indictment, an
         enterprise affecting interstate or foreign commerce existed;

Two:   That the enterprise was engaged in racketeering activity;

Three: That the defendant had a position in the enterprise;

Four:  That the defendant knowingly and unlawfully murdered, or aided and abetted the
         murder of, Melvin Reyes, a.k.a., "Pelon"; and

Five:  One of the purposes of the defendant in doing so was to maintain or increase his
         position in the enterprise.

(United States v. Fiel, 35 F.3d 997, 1003 (4th Cir. 1994); United States v. Concepcion, 983 F.2d 369, 381 (2d Cir.1992); Title 18, United States Code, Section 1959(a) & (b).)

GOVERNMENT'S PROPOSED JURY INSTRUCTION NO. 7

"Enterprise" Defined - Counts One and Two

As used in these instructions the term "enterprise" includes any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity.

The term "enterprise," as used in these instructions, may include a group of people associated in fact, even though this association is not recognized as a legal entity. A group or association of people can be an "enterprise" if these individuals have joined together for the purpose of engaging in a common course of conduct. Such an association of persons may be established by evidence showing an ongoing organization, formal or informal, and by evidence that the people making up the association functioned as a continuing unit. Such an association of individuals may retain its status as an "enterprise" even though the membership of the association changes by adding or losing individuals during the course of its existence.

(2B O'Malley, Grenig and Lee, <u>Federal Jury Practice and Instructions,</u> Section 56.04 (5th ed. 2000).)

GOVERNMENT'S PROPOSED JURY INSTRUCTION NO.8

"Engaged In, Or The Activities Of Which Affect, Interstate or
Foreign Commerce"Defined - Counts One and Two

Interstate commerce means trade, or business, or travel between the states.  The phrase "engaged in, or the activities of which affect, interstate ... commerce," as used in these instructions, means to be involved in or to affect in some way trade, or business, or travel between the states.  Foreign commerce means such trade, business, or travel between the United States and another country.

To establish the requisite effect on interstate or foreign commerce, the government is not required to prove a significant or substantial effect on interstate or foreign commerce.  Rather, a minimal effect on interstate or foreign commerce is sufficient.

It is not necessary for the Government to prove that the individual racketeering acts themselves affected interstate or foreign commerce;  rather, it is the enterprise and its activities considered in their entirety that must be shown to have that effect.  On the other hand, this effect on interstate or foreign commerce may be established through the effect caused by the individual racketeering acts.

Moreover, it is not necessary for the government to prove that the defendant knew that the enterprise would affect interstate or foreign commerce, that the defendant intended to affect interstate or foreign commerce, or that the defendant engaged in, or his activities affected, interstate or foreign commerce.

To satisfy this element, the government need only prove beyond a reasonable doubt either that the activities of the enterprise considered in their entirety had some minimal effect on interstate or foreign commerce, or that the enterprise was "engaged in" interstate or foreign commerce.

(2B O'Malley, Grenig, Lee, Federal Jury Practice and Instructions, Section 56.05 (5th Ed. 2000), *modified*; *United States v. Gray*, (4th Cir. 1998); *United States v. Riddle*, 249 F.3d 529, 537 (6th Cir. 2001); *United States v. Miller*, 116 F.3d 641, 673-74 (2d Cir. 1997); *United States v. Norton*, 867 F.2d 1359 (11th Cir. 1989)(collecting cases); *United States v. Muskovsky*, 863 F.2d 1319, 1325 (7th Cir. 1988); *United States v. Conn*, 769 F.2d 420, 423-24 (7th Cir. 1985); *United States v. Long*, 651 F.2d 239, 241-42 (4th Cir. 1981).)

GOVERNMENT'S PROPOSED JURY INSTRUCTION NO. 9

"Racketeering Activity"Defined - Counts One and Two

The second element of each of the charges in Counts One and Two of the Superseding Indictment requires that the government prove beyond a reasonable doubt that the enterprise was engaged in racketeering activity on or around the time charged in the indictment.  The RICO -- or Racketeer Influenced and Corrupt Organizations -- statute, Title 18 of the United States Code, Section 1961, defines the term "racketeering activity" to mean the commission of certain crimes, including any acts or threats involving murder in violation of the laws of the Commonwealth of Virginia, and interference with commerce by extortion in violation of federal law.

It is for you to determine whether the enterprise engaged in these activities as charged. You should give the words "engaged in" their ordinary, everyday meaning.  "Any act" includes an attempt to commit that crime.

Murder

In order for the state offense of murder to be considered as a racketeering act, the government must prove to you beyond a reasonable doubt that the enterprise, through its members,  committed, or attempted to commit murder.  In Virginia, murder is defined, in section 18.2-32 of the Code of Virginia, to include first-degree and second-degree murder.  You may find that MS-13 engaged in racketeering activity if you find beyond a reasonable doubt that the enterprise engaged in first-degree **or** second-degree murder.

First-degree murder includes any "willful, deliberate, and premeditated killing."  The following constitutes first-degree murder under section 18.2-32 of the Code of Virginia: (1) a perpetrator killed a person, (2) the killing was malicious, and (3) the killing was also willful, deliberate, and premeditated.

"Malice" is that state of mind which results in the intentional doing of a wrongful act to another without legal excuse or justification, at a time when the mind of the actor is under the control of reason. Malice may result from any unlawful or unjustifiable motive including anger, hatred or revenge. Malice may be inferred from any deliberate and cruel act against another, however sudden. "Malice" may be express or implied. Express malice is evidenced when one kills another with a sedate, deliberate mind and formed design. Implied malice exists when any purposeful, cruel act is committed by one individual against another without any, or without great provocation. You may infer malice from the deliberate use of a deadly weapon unless, from all the evidence, you have a reasonable doubt as to whether malice existed. You may, but are never obligated, to find malice aforethought from the wanton and reckless indifference to human life. A "deadly weapon" is any object or instrument that is likely to cause death or great bodily injury because of the manner, and under the circumstances, in which it is used.

"Willful, deliberate, and premeditated" means that the Government must prove beyond a reasonable doubt that the perpetrator had a specific intent to kill, adopted at some time before the killing, but which need not exist for any particular length of time. An intent to kill may be formed only a moment before the fatal act is committed provided the perpetrator had time to think and did intend to kill.

The following constitutes second-degree murder under section 18.2-32 of the Code of Virginia: (1) a perpetrator killed a person and (2) the killing was done with malice.

An attempt to commit either first-degree or second-degree murder also constitutes a racketeering act. "Attempt" is defined under Virginia law as a perpetrator intending to commit a crime and taking a direct act toward the commission of that crime. The intent required to be proved in an attempted crime is the specific intent in the person's mind to commit the particular

crime for which the attempt is charged. In determining whether the intent has been proved, you may consider the conduct of the person involved and all the circumstances revealed by the evidence. The direct act required to be proved in an attempted crime is an act which shows a present intention to commit the crime. The act need not be the last act prior to the actual commission of the crime, but it must be more than mere preparation. It is not a defense to attempted murder that a perpetrator voluntarily withdrew before actually committing the murder or that some other person or thing prevented the murder from being committed.

In this case, the government has presented evidence to prove that the following constitute racketeering acts of murder and attempted murder [depending on evidence admitted at trial]:

1)      Murder of a juvenile male, J.S., on or about May 16, 2004;

2)      Attempted killing of Muhammad Najim on or about October 15, 2005; and

3)      Murder of Shannah Angeles in and around July 2006

If you find beyond a reasonable doubt that MS-13, through its members, engaged in any of the above described acts or threats constituting murder, or attempted murder, under Virginia law, as I have just defined those crimes, then you may find this racketeering act established. The government does not allege, and no evidence has been introduced to suggest otherwise, that the defendant, OSCAR OMAR LOBO-LOPEZ, participated in any of these murders or attempted murders. Rather, the government has offered this evidence to prove that the alleged enterprise, MS-13, was engaged in racketeering activity. You may only consider these acts of murder and attempted murder as evidence of MS-13's having engaged in racketeering activity, and you may not consider these particular acts in any way as proof that on or about May 5, 2007, the defendant committed the violent crimes related to Melvin Reyes, a.k.a., "Pelon," as alleged in Counts One and Two.

Interference with Commerce by Extortion

To consider the offense of interference with commerce by extortion as a racketeering act, the government must prove to you beyond a reasonable doubt that the enterprise, through its members, committed this crime.  Section 1951 of Title 18 of the United States Code provides, in pertinent part, that whoever in any way or degree obstructs, delays, or affects commerce or the movement of any article or commodity in commerce, by robbery or extortion or attempts or conspires so to do, or commits or threatens physical violence to any person or property in furtherance of a plan or purpose to do anything in violation of this section shall be guilty of an offense against the United States.   The term "extortion" means the obtaining of property from another, with his consent, induced by wrongful use of actual or threatened force, violence, or fear, or under color of official right.  Drug dealing is an inherently economic enterprise that affects interstate commerce.

If you find beyond a reasonable doubt that MS-13, through its members, interfered with commerce by extortion, as I have just defined that crime, then you may find this racketeering act established. The government has offered this evidence to prove that the enterprise, MS-13, was engaged in racketeering activity as well as had an effect on interstate commerce.  You may only consider the interference with commerce by extortion as evidence of MS-13's having engaged in racketeering activity and/or having affected interstate commerce, and you may not consider such crimes in any way as proof that beginning in and around January 2007 and continuing through in and around May 5, 2007, the defendant committed the violent crimes related to Melvin Reyes, a.k.a. "Pelon," as alleged in Counts One and Two.

(2B O'Malley, Grenig and Lee, <u>Federal Jury Practice and Instructions,</u> Section 56.06 (5th ed. 2000), *modified*; Code of Virginia, Annotated, Sections 18.2-26 and 18.2-32; Virginia Model Jury Instructions (Criminal) (4th Ed. 2003), Instructions No. 8.120, 8.140, 8.160, 33.220, 33.240, 33.260; *Essex v. Commonwealth*, 228 Va. 273, 280 (1984); *Stewart v. Commonwealth*, 245 Va. 222, 241 (1993); Title 18, United States Code, Section 1951; *United States v. Williams*, 342 F.3d 350 (2003).)

GOVERNMENT'S PROPOSED JURY INSTRUCTION NO.10

Position in the Racketeering Enterprise - Counts One and Two

The third element of each of the charges contained in Counts One and Two of the Superseding Indictment that the government must prove beyond a reasonable doubt is that the defendant held a position in the racketeering enterprise.  "Position" is to be given its ordinary meaning, and is not limited to the meaning the enterprise itself may have used.  For example, you have heard testimony that there are certain requirements to become a member of Mara Salvatrucha, or MS-13.  It is not necessary, under the statute, for a defendant to have been made a member of Mara Salvatrucha, or MS-13, or to have aspired for membership.  Rather, it is sufficient to find a defendant had a position in the enterprise if you find that he knowingly and willfully associated himself with the enterprise.  A defendant need not have been associated with the enterprise for the entire period of its existence, but a defendant must have been associated with the enterprise at the time he committed the crime charged.

A defendant's association with the enterprise must be knowing.  That is, he must be connected to the enterprise in some meaningful way and have knowledge of the existence of the enterprise through a general awareness of some of its purposes, activities, and personnel.

(*United States v. Brady*, 26 F.3d 282, 289-90 (2d Cir. 1994).)

GOVERNMENT'S PROPOSED JURY INSTRUCTION NO. 11

The Violent Crime - Counts One and Two

For Counts One and Two, the fourth element that the government must prove beyond a reasonable doubt is that the defendant, OSCAR OMAR LOBO-LOPEZ, unlawfully and knowingly committed the violent crimes alleged in each of those counts.

In Count One, the government must prove beyond a reasonable doubt that the defendant unlawfully and knowingly conspired together and with others to murder Melvin Reyes, a.k.a. "Pelon."  In Count Two, the government must prove beyond a reasonable doubt that the defendant unlawfully and knowingly murdered Melvin Reyes, or aided and abetted this crime.

Murder and attempt have already been defined above, and those instructions must guide you here.

Count One is a conspiracy count.  A conspiracy is a kind of criminal partnership – a combination or agreement of two or more persons to join together to accomplish some unlawful purpose.

The crime of conspiracy as charged in Count One of the Superseding Indictment is an independent offense.  It is separate and distinct from the crime of murder, which the law refers to as a "substantive crime."

Congress has deemed it appropriate to make conspiracy, standing alone, a separate crime even if the conspiracy is not successful.  This is because collective criminal activity poses a greater threat to the public's safety and welfare than individual conduct, and increases the likelihood of success of a particular criminal venture.

(Code of Virginia, Annotated, Sections 18.2-26, 18.2-32, and 18.2-51; Virginia Model Jury Instructions (Criminal) (4th Ed. 2003), Instructions No. 33.240, G37.100; 1 Sand, Loughlin, and Reiss, Modern Federal Jury Instructions, Section 19-2, *modified*.)

GOVERNMENT'S PROPOSED JURY INSTRUCTION NO. 12

Conspiracy--Existence of an Agreement - Count One

A criminal conspiracy is an agreement or a mutual understanding knowingly made or knowingly entered into by at least two people to violate the law by some joint or common plan or course of action. A conspiracy is, in a very true sense, a partnership in crime. A conspiracy or agreement to violate the law, like any other kind of agreement or understanding, need not be formal, written, or even expressed directly in every detail.

The government must prove that the defendant, OSCAR OMAR LOBO-LOPEZ knowingly and deliberately arrived at an agreement or understanding with another person or persons that they would violate some law(s) by means of some common plan or course of action as alleged in Count One of the Superseding Indictment. It is proof of this conscious understanding and deliberate agreement by the alleged members that should be central to your consideration of the charge of conspiracy.

To prove the existence of a conspiracy or an illegal agreement, the government is not required to produce a written contract between the parties or even produce evidence of an express oral agreement spelling out all of the details of the understanding. To prove that a conspiracy existed, moreover, the government is not required to show that all of the people named in the Superseding Indictment as members of the conspiracy were, in fact, parties to the agreement, or that all of the members of the alleged conspiracy were named or charged, or that all of the people whom the evidence shows were actually members of a conspiracy agreed to all of the means or methods set out in the Superseding Indictment.

Unless the government proves beyond a reasonable doubt that a conspiracy, as just explained, actually existed, then you must acquit the defendant.

(2 O'Malley, Grenig and Lee, <u>Federal Jury Practice and Instructions</u>, Section 31.04 (5th ed. 2000, Updated by the 2003 Pocket Part); *United States v. Anderson*, 611 F.2d 504, 511 (4th Cir.1979)(as long as evidence establishes the participation of two or more persons in a conspiracy, an indictment need not specifically name anyone other than the defendant).)

GOVERNMENT'S PROPOSED JURY INSTRUCTION NO.  13

Conspiracy--Membership in an Agreement - Count One

Before the jury may find that the defendant, OSCAR OMAR LOBO-LOPEZ, or any other person, became a member of the conspiracy charged in Count One of the Superseding Indictment, the evidence in the case must show beyond a reasonable doubt that defendant knew the purpose or goal of the agreement or understanding and deliberately entered into the agreement intending, in some way, to accomplish the goal or purpose by this common plan or joint action.

If the evidence establishes beyond a reasonable doubt that the defendant knowingly and deliberately entered into an agreement to murder Melvin Reyes, the fact that the defendant did not join the agreement at its beginning, or did not know all of the details of the agreement, or did not participate in each act of the agreement, or did not play a major role in accomplishing the unlawful goal is not important to your decision regarding membership in the conspiracy.

Merely associating with others and discussing common goals, mere similarity of conduct between or among such persons, merely being present at the place where a crime takes place or is discussed, or even knowing about criminal conduct does not, of itself, make someone a member of the conspiracy or a conspirator.

(2 O'Malley, Grenig and Lee, Federal Jury Practice and Instructions, Section 31.05 (5th ed. 2000).)

GOVERNMENT'S PROPOSED JURY INSTRUCTION NO.  14

Success of Conspiracy Immaterial - Count One

The government is not required to prove that the parties to or members of the alleged

agreement or conspiracy were successful in achieving any or all of the objects of the agreement

or conspiracy.

(2 O'Malley, Grenig and Lee, Federal Jury Practice and Instructions, Section 31.08 (5th ed.
2000).)

<u>GOVERNMENT'S PROPOSED JURY INSTRUCTION NO. 15</u>

<u>Purpose to Maintain/Increase Position in Enterprise - Counts One and Two</u>

The fifth element of each of the charges in Counts One and Two of the Superseding Indictment that the government must prove beyond a reasonable doubt is that at least one of the defendant's purposes in committing the violent crimes alleged in each count was to maintain or increase his position in the racketeering enterprise.

In determining whether the defendant's purpose was to "maintain" or "increase" his position in the enterprise, you should give those words their ordinary meaning. You should consider all of the facts and circumstances in making that determination. For example, you may consider what, if any, position a defendant held in the enterprise, and the extent, if at all, commission of the alleged crimes served to maintain, uphold or enhance his position within the enterprise.

You need not, however, find that maintaining or increasing position in the enterprise was the defendant's sole or even principal motive. It is sufficient if you find that a defendant conspired and did commit violent crimes because he knew it was expected of him by reason of his membership in the enterprise or that he committed it in furtherance of that membership.

In deciding what a defendant's "purpose" was in committing a particular act, you must determine what he had in mind. Since one cannot look into a person's mind, you have to determine his purpose by considering all of the facts and circumstances before you.

(*United States v. Concepcion*, 983 F.2d 369, 381 (2d Cir. 1992); *United States v. Thai*, 29 F.3d 785, 817 (2d Cir. 1994); *United States v. Fiel*, 35 F.3d 997, 1004 (4th Cir. 1994).)

GOVERNMENT'S PROPOSED JURY INSTRUCTION NO. 16

The Nature of the Offense Charged - Count Three

On or about May 5, 2007, in Fairfax County, Virginia, within the Eastern District of Virginia and elsewhere, the defendant, OSCAR OMAR LOBO-LOPEZ, also known as "Joker," did unlawfully and knowingly carry, use, brandish, and discharge firearms, specifically handguns, during and in relation to a crime of violence for which he may be prosecuted in a court of the United States, specifically, murder in aid of racketeering activity, in violation of Title 18, United States Code, Section 1959(a)(1), as set forth and charged in Count Two of this Superseding Indictment, which is re-alleged and incorporated by reference herein; and caused the death of Melvin Reyes, also known as "Pelon," through the use of the firearms, which killing was murder, as defined in 18 U.S.C. § 1111, in that the defendant, with malice aforethought did unlawfully kill Melvin Reyes by shooting him with the firearms; and did aid, abet, and assist another in the commission of said offense.

(In violation of Title 18, United States Code, Sections 2, 924(c)(1)(A), and 924(j).)

GOVERNMENT'S PROPOSED JURY INSTRUCTION NO. 17

The Statute Defining the Offense Charged - Count Three

Section 924(c)(1)(A) of Title 18 of the United States Code provides, in pertinent part,

that:

> "Whoever, during and in relation to any crime of violence . . ., uses or carries a firearm, shall,. . ."

be guilty of an offense against the United States.

Furthermore, Section 924(j) of Title 18 of the United States Code provides, in pertinent

part, that:

> "A person who, in the course of a violation of subsection (c), causes the death of a person through the use of a firearm shall, . . ."

also be guilty of an offense against the United States.

(Title 18, United States Code, Sections 924(c)(1)(A) and 924(j).)

GOVERNMENT'S PROPOSED JURY INSTRUCTION NO. 18

The Essential Elements of the Offense Charged - Count Three

In order to sustain its burden of proof for the crime of causing the death of another

through the use of a firearm during and in relation to a crime of violence, as charged in Count

Two of the Superseding Indictment, the government must prove the following essential elements

beyond a reasonable doubt:

One:        The defendant, OSCAR OMAR LOBO-LOPEZ committed either of the
            crimes of violence of conspiracy to murder in aid of racketeering or
            murder in aid of racketeering, as charged in Counts One and Two of the
            Superseding Indictment;

Two:        During and in relation to the commission of either of these crimes of
            violence, the defendant  knowingly used or carried a firearm, or aided and
            abetted the use or carrying of a firearm; and

Three:      During and in relation to the commission of either of these crimes of
            violence, the defendant knowingly and willfully caused the death of
            Melvin Reyes as charged in Counts One and Two of the Superseding
            Indictment, with malice aforethought, that is, deliberately, and
            intentionally or with callous and wanton disregard for human life, through
            the use of a firearm, or did aid, abet, and assist another in the commission
            of said offense, through the use of a firearm.

(2 Devitt, Blackmar & O'Malley, Federal Jury Practice & Instructions, Sections 36.18 and
38b.16 (4th Ed. 1990) modified; 2A O'Malley, Grenig and Lee, Federal Jury Practice and
Instructions, Section 45.16 (5th ed. 2000); United States v. Fleming, 739 F.2d 945, 947-48 (4th
Cir. 1984)(proof of malice); Bailey v. United States, 116 S.Ct. 501 (1995); United States v.
Nguyen, 1998 WL 559685 (10th Cir.(Kan.)).)

<u>GOVERNMENT'S PROPOSED JURY INSTRUCTION NO.  19</u>

<u>"Uses . . . a Firearm" Defined - Count Three</u>

The phrase "uses . . . a firearm" means having a firearm, or firearms, available to assist or aid in the commission of the crimes alleged in Counts One and Two of the Superseding Indictment.  In determining whether defendant used a firearm, and aided and abetted the use of a firearm, you may consider all of the factors received in evidence in the case including the nature of the underlying crime of violence alleged, the proximity of the defendant to the firearm in question, the usefulness of the firearm to the crime alleged, and the circumstances surrounding the presence of the firearm.

The government is required  to prove beyond a reasonable doubt that the defendant actively employed the firearm described in Count Three.  Examples of how a defendant may "use" a firearm include, but are not limited to, brandishing, displaying, bartering, striking with, mentioning, and, most obviously, firing or attempting to fire a firearm.

(O'Malley, Grenig & Lee, <u>Federal Jury Practice and Instructions</u>, Section 39.20 (5th ed. 2000), *modified*; *Bailey v. United States*, 516 U.S. 137, 147-48 (1995); *United States v. Mitchell*, 104 F.3d 649 (4th Cir. 1997); *United States v. Adkins, Jr.*, 937 F.2d 947 (4th Cir. 1991).)

GOVERNMENT'S PROPOSED JURY INSTRUCTION NO. 20

"Carries a Firearm" Defined - Count Three

The phrase "carries a firearm" requires that a defendant knowingly possess a firearm and that he bear, move, convey, or transport it in some manner.  The term "carries a firearm" does not require that the firearm be readily accessible to a defendant.

(*United States v. Mitchell*, 104 F.3d 649, 653 (4th Cir. 1997).)

GOVERNMENT'S PROPOSED JURY INSTRUCTION NO. 21

"Brandish" Defined - Count Three

The term "brandish" means, with respect to a firearm, to display all or part of the firearm, or otherwise make the presence of the firearm known to another person, in order to intimidate that person, regardless of whether the firearm is directly visible to that person.

(Title 18, United States Code, Section 924(c)(4).)

GOVERNMENT'S PROPOSED JURY INSTRUCTION NO. 22

"Crime of Violence" Defined - Count Three

The term "crime of violence" means an offense that is a felony and has as one of its essential elements the use, attempted use, or threatened use of physical force against the person or property of another, or an offense that by its very nature involves a substantial risk that such physical force may be used in committing the offense.

The offenses alleged in Counts One and Two are crimes of violence.

(O'Malley, Grenig & Lee, Federal Jury Practice and Instructions, §39.19 (5th ed. 2000).)

GOVERNMENT'S PROPOSED JURY INSTRUCTION NO. 23

"Aiding and Abetting"Explained - Counts Two and Three

A person may violate the law even though he does not personally do each and every act constituting the offense if that person "aided and abetted" the commission of the offense.

Section 2(a) of Title 18 of the United States Code provides:

[w]hoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal.

Before a defendant may be held responsible for aiding and abetting others in the commission of a crime, it is necessary that the government prove beyond a reasonable doubt that the defendant knowingly and deliberately associated himself in some way with the crime charged and participated in it with the intent to commit the crime.

In order to be found guilty of aiding and abetting the commission of the crimes charged in Counts Two and Three of the Superseding Indictment, the government must prove beyond a reasonable doubt that the defendant:

One, knew that the crime charged was to be committed or was being committed,

Two, knowingly did some act for the purpose of aiding the commission of that crime, and

Three, acted with the intention of causing the crime charged to be committed.

Before the defendant may be found guilty as an aider or an abettor to the crime, the government must also prove, beyond a reasonable doubt, that someone committed each of the essential elements of the offenses charged as detailed for you in these Instructions.

Merely being present at the scene of the crime or merely knowing that a crime is being committed or is about to be committed is not sufficient conduct for the jury to find that a defendant aided and abetted the commission of that crime.

The government must prove that a defendant knowingly associated himself with the crime in some way as a participant-- someone who wanted the crime to be committed--not as a mere spectator.

(1A O'Malley, Grenig and Lee, <u>Federal Jury Practice and Instructions</u>, Section 18.01 (5th ed. 2000).)

GOVERNMENT'S PROPOSED JURY INSTRUCTION NO. 24

Proof May Be Disjunctive - All Counts

The Court instructs the jury that although the indictment may charge a defendant with committing an offense in several ways, using conjunctive language (i.e., "and"), it is sufficient if the government proves the offense in the disjunctive (i.e., "or"), that is to say, the jury may convict on a unanimous finding of any of the elements of a conjunctively charged offense. Therefore, I instruct you that it is not necessary for the government to prove that the defendant did each of those things, named in that particular count of the indictment.  It is sufficient if the government proves beyond a reasonable doubt that the defendant did one of the alternative acts as charged, as long as you all agree that the same particular alternative act was committed.

(Adapted from Sand, Siffert, Loughlin and Reiss, Modern Federal Jury Instructions, Instruction No. 14.4 (Assault on a federal officer); *United States v. McGinnis*, 783 F.2d 755, 757 (8th Cir. 1986) (proof of any one of the violations charged conjunctively will sustain a conviction); *United States v. Webb*, 747 F.2d 278, 282 (5th Cir. 1985), *cert. denied*, 469 U.S. 1226 (1985) (it is not necessary that the accused be shown to have violated the act in all the ways charged);  *Johnson v. United States*, 298 A.2d 516 (D.C. App. 1972) (Because the actions of assaulting, resisting, impeding, intimidating or interfering are stated in the disjunctive in section 505, a finding that the defendant committed any single act will support a conviction).)