IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | |
| ) | CRIMINAL NO. 1:08CR194 |
| OSCAR OMAR LOBO-LOPEZ, ) | |
| ) | Judge T. S. Ellis, III |
| ) | |
| Defendant. ) | |

## GOVERNMENT'S OPPOSITION TO DEFENDANT'S
## MOTION FOR A NEW TRIAL

On September 28, 2009, defendant Oscar Lobo-Lopez filed a motion for a new trial pursuant to Fed. R. Crim. P. 33, asserting four grounds for a new trial: (1) the government's failure to disclose the full contents of the interview with Carlos Montoya in violation of *Brady v. Maryland*, 373 U.S. 83 (1963); (2) the government's failure to reveal the true identity and location of "Flecha" in violation of *Brady* and the government's discovery obligations; (3) the government's failure to disclose all of Sergio Amador's statements to law enforcement in violation of *Brady*; and (4) the possibility that a witness who provided exculpatory information was deported.. Defendant fails to demonstrate newly discovered *Brady* evidence or any other evidence warranting a new trial.  Defendant's claim regarding the possible deportation of a witness as a basis for new trial, however, is premature.  This Court should therefore deny the defendant's motion.

### BACKGROUND

On May 5, 2007, Melvin Reyes, also known as "Pelon," was fatally shot in the 7200 block of Commerce Street in Springfield, Virginia.  One of the witnesses to the murder, known

as "Bicho" or "El Bicho," reported speaking with "Pelon" when two assailants ran toward them. As "Bicho" fled, he heard multiple gunshots. "Bicho" identified one of the assailants as "Dado," but did not recognize the second assailant. Subsequent investigation resulted in the arrest of Sergio Amador, also known as "Dado," and the defendant, Oscar Omar Lobo-Lopez, also known as "Joker." "Bicho" knew "Joker," but stated that he did not see Joker at the scene.

On July 10, 2008, a federal grand jury returned a three-count superseding indictment charging Lobo-Lopez and Amador with conspiracy to commit murder in aid of racketeering activity, murder in aid of racketeering activity, and use of a firearm during a crime of violence. During a pre-trial motions hearing, the Court ordered the United States to provide the defendant with contact information for "Bicho." The United States complied with this request in an e-mail dated March 12, 2009. The United States also searched to determine if any immigration record existed for the true name provided by "Bicho" to law enforcement. The United States informed the defendant that no immigration record existed for "Bicho."[1]

On February 27, 2009, the codefendant, Sergio Amador, also known as "Dado," pled guilty to murder in aid of racketeering for his role in the May 5, 2007 murder of Melvin Reyes. Amador pled guilty pursuant to his plea agreement with the United States. Amador also agreed to cooperate with the United States by providing truthful and complete testimony about criminal activity. Following his guilty plea, Amador told law enforcement officers about the circumstances surrounding the murder of Melvin Reyes on May 5, 2007. During a debriefing, Amador named specific individuals who participated in the murder, including the defendant,

---

[1] The United States has subsequently searched immigration records under two additional names used by "Bicho," but found no record under either name.

"Flecha," "Snarf," and "Ciego." Subsequent investigation revealed that "Ciego's" actual name is Carlos Montoya. These debriefings were not memorialized in any reports. Prior to Amador's debriefing, law enforcement officers investigating the murder of Reyes had no information to implicate "Flecha," "Snarf," or Montoya in the murder.

Law enforcement officers investigating the Reyes murder discovered that "Flecha" was detained at a detention facility in Raybrook, New York . On March 20, 2009, investigators from Virginia traveled to Raybrook to attempt to interview "Flecha" about the murder. "Flecha'"refused to speak with law enforcement officers about the murder. In a later encounter with an FBI special agent sometime around early April 2009, "Flecha" again refused to make any comment about the murder.

Law enforcement officers subsequently located and interviewed Montoya on March 23 and March 25, 2009. Montoya confirmed his involvement in the murder, as well as the involvement of "Flecha" and "Snarf," but denied any involvement by the defendant or "Dado." We promptly notified the defendant's counsel of this exculpatory information.

In an e-mail dated March 26, 2009, the United States disclosed Montoya's identity and address to defense counsel. The e-mail also stated the nicknames of two other individuals, "Snarf" and "Flecha," who accompanied Montoya to the murder scene. Defense counsel never requested any information regarding the whereabouts of "Flecha" or "Snarf."

Based on the contact information provided by the United States, defense counsel and defense investigators met with Montoya, confirmed the information provided, and elicited additional information regarding the circumstances surrounding the murder of Reyes. In an e-mail dated April 19, 2009, defense counsel notified the government that Montoya's counsel

informed them that Montoya intended to invoke his Fifth Amendment right against self-incrimination if called as a witness at trial. Defense counsel informed the government that it would seek to introduce Montoya's exculpatory statements as a statement against interest pursuant to Fed. R. Evid. 804(b)(3), or as admissible hearsay under the residual hearsay exception at Fed. R. Evid. 807. From April 14 through April 21, 2009, the defendant was tried in the United States District Court for the Eastern District of Virginia on racketeering charges and a firearm charge stemming from the murder of Melvin Reyes. Although Montoya appeared at the courthouse pursuant to his trial subpoena, the defense did not attempt to call Montoya as a witness during the trial. On April 21, 2009, the jury returned verdicts of guilty on all three counts of the indictment.

### ARGUMENT

A court may vacate any judgment and grant a new trial if the interest of justice requires. Fed. R. Crim. P. 33. A motion for new trial based on any grounds other than newly discovered evidence must be filed within 7 days after the verdict. *Id.* A motion for new trial based on newly discovered evidence may be filed within 3 years after the verdict. *Id.* To receive a new trial based on newly discovered evidence, the defendant must demonstrate (1) the new evidence is in fact, newly discovered; (2) facts are presented from which the court may infer due diligence on the part of the movant; (3) the evidence is not merely cumulative or impeaching; (4) the evidence is material to the issues involved; and (5) the evidence is of such nature that it would probably result in an acquittal at a new trial. *United States v. Bales*, 813 F.2d 1289, 1295 (4th Cir. 1987).

Where a *Brady* violation forms the basis of a Rule 33 motion, the proper legal standard is more favorable to the defendant. *United States v. Cohn*, 166 Fed.Appx., 4, 7 (4th Cir.

2006)(unpublished opinion). First, a new trial may be warranted even though the new evidence is merely impeaching. *Id*. (citing *United States v. Bagley*, 473 U.S. 667, 676 (1985)). Second, the evidence only need be such that, on a new trial, its disclosure would result in a reasonable probability of a different result. *Id.* (citing *Kyles v. Whitley,* 514 U.S. 419, 434 (1995)).

Defendant's first ground for a new trial is the government's failure to disclose the "full contents" of Carlos Montoya's interviews in March 2009 which were memorialized in FD-302 reports after the trial. The defendant fails to demonstrate newly discovered Brady evidence from the FD-302 reports beyond the information disclosed by the United States on March 26, 2009, or obtained from the defendant's subsequent interview of Montoya. The government promptly disclosed the exculpatory information provided by Carlos Montoya. The statements provided to the defense on March 26 were exculpatory in that Montoya, who admitted to accompanying the assailants to and from the murder scene, denied that Lobo-Lopez and Amador were present at the shooting. Defendant also fails to demonstrate a reasonable probability that had he received "the full contents" of Montoya's statements the outcome of the trial would have been different, particularly in light of defense counsel's decision not to attempt to call Montoya as a witness.

Defendant's second ground for a new trial is the government's failure to disclose the true name and location of "Flecha." The defendant, however, fails to demonstrate that the true name of "Flecha," or his location, is exculpatory. In the e-mail disclosure of March 26, 2009, the United States disclosed "Flecha's" existence as well as Montoya's claim that "Flecha" was present at the murder scene. "Flecha" never made any statement to law enforcement regarding the murder on May 5, 2007. In fact, when law enforcement discovered "Flecha's" alleged involvement in the murder, they attempted to interview him about any involvement in the crime,

but had no success. Montoya, not "Flecha," provided exculpatory information to law enforcement. No evidence suggests that "Flecha" would have testified or that any testimony by Flecha would result in a reasonable probability of a different result in the outcome of the trial.

The defense also cites Rule 16 of the Federal Rules of Criminal Procedure and *Roviaro v. United States*, 353 U.S. 53 (1957) in support of his motion for a new trial. Neither authority supports the defendant's argument. Rule 16 does not require the United States to disclose the names and locations of potential witnesses. "Flecha" moreover, was not a government informant as defined in *Roviaro*. In fact, "Flecha" refused to make any statement to law enforcement demonstrating his knowledge of or participation in the murder. Defense counsel fails to demonstrate that "Flecha" would have provided any testimony material to any issue in this case. Defense counsel fails to demonstrate due diligence in attempting to ascertain "Flecha's" true identity and whereabouts. Defense counsel also fails to demonstrate that Flecha's testimony would probably result in an acquittal.

Defendant's third ground for a new trial is the government's failure to disclose all statements to law enforcement by Sergio Amador in violation of *Brady*. Among the information provided to the defendant pursuant to *Giglio v. United States*, 405 U.S. 150 (1972) were reports of statements to law enforcement in which Amador denied involvement in the murder (Discovery, pp. E00457-59), as well as a transcript of Amador's statement under oath at his change of plea hearing in which he denied firing the final shots at the murder scene. *Brady* does not require the United States to provide all witness statements to law enforcement officers, only those statements that are exculpatory or impeaching.

Defendant's fourth and final ground for a new trial is the possible deportation of a

witness whose nickname is "El Bicho." The defendant asks this Court to hold this motion in abeyance until such time as he can augment this argument in accordance with an *ex parte* memorandum to be filed. The defendant's motion should be denied on this ground because he fails to demonstrate any evidence, newly discovered or otherwise, that the witness was deported. When, and if, the defendant discovers evidence that the witness was deported, the defendant can file a motion for new trial at that time. The United States also objects to the defendant's repeated use of *ex parte* pleadings to raise issues to which the United States must eventually respond. The United States requests that any pleading addressing a request for a new trial be served on the government.

## CONCLUSION

For the foregoing reasons, the United States requests that this Court deny the defendant's motion for a new trial.

Respectfully submitted,

Neil H. MacBride
United States Attorney

By:      /s/
Morris R. Parker, Jr.
Assistant United States Attorney
Office of United States Attorney
Justin W. Williams U.S. Attorney's Building
2100 Jamieson Ave
Alexandria, VA 22314
Phone: 703-299-3700
Fax: 703-299-3982
morris.parker@usdoj.gov


        /s/
Patricia t. Giles
Assistant United States Attorney
Office of United States Attorney
Justin W. Williams U.S. Attorney's Building
2100 Jamieson Ave
Alexandria, VA 22314
Phone: 703-299-3700
Fax: 703-299-3982
patricia.giles@usdoj.gov

CERTIFICATE OF SERVICE

I certify that on the 9th day of October 2009, I electronically filed the foregoing Opposition with the Clerk of Court using the CM/ECF system, which will send a notification of such filing (NEF) to the following:

| | |
|---|---|
| Lana M. Manitta, Esq. | John C. Kiyonaga, Esquire |
| Counsel for Defendant Oscar Lobo Lopez | Counsel for Defendant Oscar Lobo Lopez |
| 201 N. Union Street, Suite 140 | 526 King Street, Suite 213 |
| Alexandria, VA 22314 | Alexandria, VA 22314 |
| (703) 299-3440 | (703) 739-0009 |
| Fax: (703) 299-3441 | Fax: (703) 836-0445 |
| E-mail: LMManitta@RRMDK.com | E-mail: jkiyonaga@earthlink.net |

By: \_\_\_\_/s/_____
Morris R. Parker, Jr.
Assistant United States Attorney
Office of United States Attorney
Justin W. Williams U.S. Attorney's Building
2100 Jamieson Ave
Alexandria, VA 22314
Phone: 703-299-3700
Fax: 703-299-3982
morris.parker@usdoj.gov