IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | | |
|---|---|---|
| OSCAR OMAR LOBO-LOPEZ, | ) | |
| Petitioner/Defendant, | ) | |
| | ) | |
| v. | ) | Civil Action No. 1:13cv1221 |
| | ) | |
| UNITED STATES OF AMERICA, | ) | Criminal No. 1:08cr194 |
| Respondent. | ) | |
| | ) | |

## MEMORANDUM OPINION

Oscar Omar Lobo-Lopez, a federal inmate convicted of (i) conspiracy to commit murder in aid of racketeering, (ii) murder in aid of racketeering, and (iii) use of a firearm during a crime of violence, has filed a *pro se* motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 ("Petr.'s Motion"). (Doc. 494).[1] Petitioner's motion is based chiefly on claims of ineffective assistance of counsel. He has also filed other motions for miscellaneous relief, including a motion to obtain affidavits from his defense counsel, a motion for a thirty-day extension of time to file his reply to the government's opposition, and a motion "for an in camera inspection of the grand jury minutes" to determine whether the grand jury was presented evidence to support a determination of probable cause on the issue of whether there was a "federal jurisdictional nexus." (Docs. 500 and 501). As both parties have fully briefed the issues,

---

[1] The "Doc." numbers included throughout this opinion refer to the location of the specific document in the district court's electronic case file.

1

and neither oral argument nor an evidentiary hearing would aid the decisional process,[2] the petition is ripe for disposition.

## I.

A brief recitation of the facts and procedural history to date is necessary to place petitioner's claims in context. The record reflects that, in 2007, petitioner was a leader of the Hollywood Locos Salvatrucha (HLS) clique[3] of MS-13, a nationwide, indeed, international crime gang with a significant presence in Northern Virginia. MS-13 is comprised of many cliques throughout the United States and El Salvador. Cliques typically hold regular membership meetings and send representatives to "general meetings" of area or regional clique leaders. At trial, witnesses for the government testified that MS-13 is united by a set of rules which dictate that members must represent the gang, never cooperate with police, and seek out rival gang members, called "chavalas," in order to attack and, if possible, kill them. *See, e.g.* Trial Tr. Apr. 16, 2009 at 160 (Doc. 421).

Trial testimony reflects that prior to May 5, 2007, petitioner and fellow MS-13 gang member, Sergio Gerardo Amador-Amador, had several confrontations with Melvin Reyes, a member of a rival gang who was attempting to recruit new members for his gang in an area MS-13 members considered their territory. Trial Tr. Apr. 16, 2009 at 828 (Doc. 421). From mid-2006

---

[2] Although petitioner requests an evidentiary hearing, 28 U.S.C. § 2255 states that a hearing is not necessary when "the motion and the files of the case conclusively show that the prisoner is entitled to no relief." In this case, a hearing is not necessary as the record evidence conclusively compels the conclusion that petitioner's claims fail on their merits. *See United States v. Witherspoon*, 231 F.3d 923, 925–26 (4th Cir. 2000); *United States v. Yearwood*, 863 F.2d 6, 7 (4th Cir. 1988) (recognizing that "[a] hearing is not required . . . on a § 2255 motion if the record of the case conclusively shows that petitioner is entitled to no relief"); *see also* Rule 78(b), Fed. R. Civ. P.

[3] Cliques are smaller groups under the MS-13 umbrella, usually associated with a particular geographic area.

onward, petitioner and Amador began patrolling for Reyes in order to find and kill him. *Id.* at 101. On May 5, 2007, petitioner and Amador found Reyes on Commerce Street in Springfield, Virginia and confronted him. *Id.* at 120. When Reyes fled, petitioner and Amador pursued him while firing their handguns at him. Several shots found their mark, striking Reyes in the leg and wounding him. Petitioner then directed Amador to "finish him." Amador then killed Reyes by shooting him several times in the head at close range. *Id.* at 124.

A federal grand jury returned a three-count superseding indictment charging petitioner with (i) conspiracy to commit murder in aid of racketeering activity, (ii) murder in aid of racketeering activity, and (iii) use of a firearm during a crime of violence. After a five-day trial, a jury found petitioner guilty on all three counts. On September 18, 2009, petitioner was sentenced to life imprisonment for murder in aid of racketeering and ten years imprisonment for the conspiracy charge, to run concurrently, and ten years imprisonment for use of a firearm during a crime of violence, to run consecutive to the sentence as to Counts One and Two. He was also ordered to pay $4,300 in restitution to the victim's family. *United States v. Lobo-Lopez*, 1:08cr194 (E.D. Va. Sept. 18, 2009) (Judgment in a Criminal Case) (Doc. 387).[4]

At trial and on appeal, petitioner was represented by two very experienced defense attorneys: John C. Kiyonaga, Esq. and Lana Marie Manitta, Esq. Following the verdict, Mr. Kiyonaga and Ms. Manitta filed a timely appeal to the Court of Appeals for the Fourth Circuit, which affirmed petitioner's convictions on March 1, 2012. *United States v. Lobo-Lopez*, 468 F. App'x 186, 191 (4th Cir. 2012). Mr. Kiyonaga and Ms. Manitta then filed a petition for

---

[4] Amador was indicted as a codefendant with petitioner for conspiracy to commit murder in aid of racketeering, murder in aid of racketeering, and use of a firearm during a crime of violence. Prior to trial, Amador pled guilty to Count Two, murder in aid of racketeering, and was sentenced to life imprisonment and ordered to pay $4,300 restitution to the family of the victim. *United States v. Lobo-Lopez, et al.*, 1:08cr194 (E.D. Va. June 5, 2009) (Judgment in a Criminal Case) (Doc. 360).

3

certiorari to the United States Supreme Court on petitioner's behalf, which the Supreme Court denied on October 1, 2012. *United States v. Lobo-Lopez*, 468 F. App'x 186, *cert. denied* 133 S. Ct. 258 (Oct. 1, 2012) (No. 11-11060).

A year later, on October 1, 2013, petitioner filed the instant motion to vacate, set aside or correct his sentence, pursuant to 28 U.S.C. § 2255, alleging that he was denied his Sixth Amendment right to the effective assistance of counsel. Petitioner's motion raises seven grounds in support of his ineffective assistance of counsel claim:

> (1) Counsel's failure, at trial and on appeal, to challenge whether the government proved that petitioner's criminal enterprise affected interstate or foreign commerce;
>
> (2) Counsel's failure, at trial and on appeal, to object to the government "vouching" that it had proved jurisdiction, which petitioner alleges violates the "advocate/witness rule";
>
> (3) Counsel's failure, at trial and on appeal, to object to jury instructions on the effect on interstate commerce issue;
>
> (4) Counsel's failure, at trial and on appeal, to object to a defect in the indictment, which petitioner contends failed to allege malice aforethought with respect to the murder charge;
>
> (5) Counsel's failure, at trial and on appeal, to object to hearsay testimony admitted in violation of *Crawford v. Washington*, 541 U.S. 36 (2004);
>
> (6) Counsel's failure, at trial and on appeal, to object to the government's failure to prove that the alleged enterprise had an "economy agenda"; and
>
> (7) Counsel's failure, at trial and on appeal, to object to the Court's order that petitioner pay restitution on the ground that restitution was not raised in the superseding indictment or before the jury.

In the alternative, petitioner also appears to argue that since his trial, the Supreme Court has issued decisions reflecting new rules of law as to his claims in grounds (5), (6), and (7).

Petr.'s Motion at 15 (Doc. 494) (stating that the basis for these three grounds to vacate petitioner's sentence were not raised at trial or on appeal "because ... the recent U.S. Supreme Court decisions did not exist").

As already noted, oral argument is dispensed with as the facts and legal contentions are adequately set forth in the existing record and oral argument would not aid the decisional process. *See supra* note 2.

## II.

A two-prong analysis applies to claims of ineffective assistance of counsel. *See Strickland v. Washington*, 466 U.S. 668, 688–89 (1984). Specifically, to prevail on such a claim, a petitioner must show, first, that his counsel's performance "fell below an objective standard of reasonableness." *Id.* at 688. Judicial review of counsel's performance in this context is "highly deferential." *Id.* at 689. Indeed, to establish that counsel's performance was objectively unreasonable, a petitioner must overcome the strong presumption that counsel rendered "adequate assistance and made all significant decisions in the exercise of reasonable judgment." *Id.* at 690.

If a petitioner demonstrates that counsel's performance was objectively unreasonable, *Strickland* next requires the petitioner to establish that "the deficient performance prejudiced the defense." *Id.* at 694. A proper prejudice analysis also requires consideration of whether "the result of the proceeding was fundamentally unfair or unreliable." *Lockhart v. Fretwell*, 506 U.S. 364, 369 (1993). Thus, counsel may be deemed constitutionally ineffective only if his or her "conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland*, 466 U.S. at 686.

It is through the lens of these guiding principles that petitioner's claims of ineffective assistance of counsel must be analyzed.

### III.

In grounds (1), (2), (3), and (6) of his motion, petitioner claims that his defense counsel were ineffective for failing to contest whether the government had adequately proved the federal jurisdictional nexus required by 18 U.S.C. § 1959, which criminalizes murder and other crimes of violence committed "for the purpose of gaining entrance to or maintaining or increasing position in an enterprise engaged in racketeering activity." The statute defines "enterprise" as "any partnership, corporation, [or] association, . . . which is engaged in, or the activities of which affect, interstate or foreign commerce." 18 U.S.C. § 1959. Specifically, petitioner argues that rather than contesting whether the alleged enterprise must have a "substantial" rather than "minimal" effect on interstate or foreign commerce, which petitioner characterizes as "frivolous" in the face of Fourth Circuit precedent,[5] defense counsel, in petitioner's view, should have focused on whether the government offered *any* adequate proof of the enterprise's effect on interstate commerce. *See* Petr.'s Motion, Grounds and Supportive Facts (Doc. 494) ("[B]oth attorneys's [sic] completely ignored . . . the Govt. completely lacking its Hobbs Act Componant [sic] Element of proof under any satisfactory form . . . .").

The record clearly establishes that defense counsel, in addition to arguing that the government should have to prove that the enterprise had a "substantial" effect on interstate or foreign commerce, also argued vigorously that the government did not show a qualified enterprise under 18 U.S.C. § 1959. In her opening statement, Ms. Manitta stated that the

---

[5] Petitioner is correct that Fourth Circuit precedent had previously established that a racketeering enterprise need only have a minimal effect on interstate or foreign commerce. *See United States v. Williams*, 342 F.3d 350, 354 (4th Cir. 2003).

6

government's claim that MS-13 was an enterprise was "a fiction" and "a stretch of the law of racketeering." Trial Tr. Apr. 15, 2009 at 41, 45 (Doc. 420). The cross-examination of the government's expert witness Detective Claudio Saa and of witnesses Osmin Alfaro-Fuentes and Adonay Obando Rivera, members of MS-13, was directed at undermining the government's case with respect to the enterprise issue. *See id.* at 81–83, 129–31, 196–99. This issue was also the centerpiece of Mr. Kiyonaga's closing argument and was raised by defense counsel in defendant's unsuccessful appeal to the Fourth Circuit and petition for certiorari to the Supreme Court. Trial Tr. Apr. 21, 2009 at 41–53 (Doc. 424); *United States v. Lobo-Lopez*, 468 F. App'x 186. But defense counsel elected not to argue that the trial record did not reflect even a minimal effect on interstate or foreign commerce, and petitioner claims this constituted ineffective assistance because, in petitioner's view, this argument was "a complete bang-winner." Petr.'s Motion Ex. 1 (Doc. 494-1).

Petitioner's argument that defense counsel should have contested the interstate commerce issue is unpersuasive. It is clear that counsel's strategic choice to focus on whether an enterprise had been proved rather than whether an effect on interstate commerce was proved was objectively reasonable. There was ample trial evidence of a more than minimal effect on interstate and foreign commerce, and competent counsel might reasonably have concluded that argument on this point would be frivolous and counterproductive. As the transcript reflects, the government adduced the following evidence of the effect of the enterprise on interstate or foreign commerce:

- MS-13 exists throughout the United States, Central America, and Canada (Trial Tr. Apr. 15, 2009 at 60 (Doc. 420));

- A member of the "Western" clique in Los Angeles came to Herndon, Virginia and established a branch of that clique there (Trial Tr. Apr. 15, 2009 at 97 (Doc. 420));

7

- Gang members pay dues to their clique at clique meetings and this money is sent to El Salvador or elsewhere to help gang members in jail and to purchase weapons (Trial Tr. Apr. 15, 2009 at 99, 131, 141, 146, 170–72, 190–91 (Doc. 420); Trial Tr. Apr. 16, 2009 at 46, 56 (Doc. 421));

- Gang members fled Virginia following the commission of crimes and drove across state lines to avoid capture (Trial Tr. Apr. 15, 2009 at 121 (Doc. 420); Trial Tr. Apr. 16, 2009 at 53 (Doc. 421));

- Gang members communicated with individuals in El Salvador to receive new gang rules and to move for the acceptance of new leaders of cliques in the United States (Trial Tr. Apr. 15, 2009 at 106–07, 173–74 (Doc. 420));

- Gang members in Virginia traveled to Maryland for general meetings and to recruit other members for MS-13 (Trial Tr. Apr. 16, 2009 at 52 (Doc. 421)); and

- Gang members forced a drug dealer to give them drugs as "rent" or "dues" to MS-13 (Trial Tr. Apr. 17, 2009 at 59 (Doc. 422)).

This evidence manifestly shows greater than a minimal effect on interstate or foreign commerce. As such, defense counsel was not ineffective in deciding not to pursue the argument that the government failed to demonstrate even a minimal effect on interstate commerce. Accordingly, petitioner fails to meet the first prong of *Strickland* with respect to this claim.

Petitioner's other specific contentions in this regard are also without merit. For example, petitioner contends that his counsel were ineffective for failing to object when the government violated the "advocate-witness rule" by "vouching" for the enterprise's effect on interstate commerce rather than proving that element through the presentation of evidence. Petr.'s Motion, Ex. A (Doc. 494-1). This contention is quite simply wrong. Although less than clear, petitioner in connection with this contention appears to be referring to the statement in the government's closing argument that "[c]learly MS-13 is an enterprise. And it also affects interstate commerce."

Trial Tr. Apr. 21, 2009 at 17 (Doc. 424). To the extent that petitioner is contending that the government's closing argument amounts to vouching for the credibility of a witness, a review of the record discloses no such vouching.[6] Alternatively, to the extent that petitioner is seeking to invoke the American Bar Association ("ABA") Code of Professional Responsibility "advocate-witness rule," he clearly misunderstands the rule. The rule advises lawyers to refrain from representing a client "in contemplated or pending litigation when it is obvious that he will be called as a witness." *United States v. Johnston*, 690 F.2d 638, 642 (7th Cir. 1982). Quite clearly, this did not occur. The government's statements during closing argument that petitioner's and MS-13's activities affected interstate commerce were entirely proper, supported by trial evidence, and do not implicate the ABA advocate-witness rule. Accordingly, defense counsel were not ineffective for failing to object on this ground and petitioner's contention fails *Strickland*'s first prong.

Petitioner further contends that his counsel were ineffective for failing to object to the jury instruction that petitioner claims "misled" the jury to believe, as petitioner put it, that "[d]rug dealing, business, travel, sending money, and calling other MS-13 members from outside the United States alone meet the government's required 'Jurisdictional Nexus Element Burden' beyond a reasonable doubt." Petr.'s Motion at 8 (Doc. 494). Again, this is simply wrong. The record reflects that the jury was correctly instructed that "'interstate commerce' means trade or business or travel between the states," and that "[d]rug dealing is an inherently economic enterprise that affects interstate commerce." Trial Tr. Apr. 21, 2009 at 85, 92 (Doc. 424). This instruction is consistent with Fourth Circuit precedent stating, just as the instruction did, that "[d]rug dealing ... is an inherently economic enterprise that affects interstate commerce."

---

[6] "It is impermissible for a prosecutor to vouch for or bolster the testimony of government witnesses in arguments to the jury." *United States v. Sanchez*, 118 F.3d 192, 198 (4th Cir. 1997).

*United States v. Williams*, 342 F.3d 350, 355 (4th Cir. 2003). Thus, defense counsel's failure to object on this ground was objectively reasonable; the instruction correctly stated the governing law. Once again petitioner fails to meet *Strickland*'s first prong with respect to this claim of ineffective assistance of counsel.

As a part of his third ground for his § 2255 motion, petitioner argues that his counsel were ineffective by failing to object to an instruction on the jurisdictional elements of an 18 U.S.C. § 1962 offense, rather than for the § 1959 offense he was charged with in the superseding indictment. Petr.'s Motion at 8 (Doc. 494).[7] Yet, the record flatly refutes this claim; it shows that the jury was properly instructed on the charges in the indictment, the text of 18 U.S.C. § 1959, and the elements of conspiracy to commit murder in aid of racketeering and murder in aid of racketeering activities. *See* Trial Tr. 80–84 (Doc. 424). The failure of defense counsel to object on this ground was objectively reasonable and, indeed, quite correct; such an objection would have been frivolous. Thus, petitioner again fails to meet *Strickland*'s first prong, as defense counsel were not ineffective in this respect.

Finally, petitioner contends that his counsel were ineffective for failing to argue or object on the basis that an "enterprise" under the Racketeer Influenced and Corrupt Organizations Act ("RICO") "must have an economy [sic] agenda." Petr.'s Motion at 15 (Doc. 494). This claim also fails, as the Supreme Court has held that the RICO jurisdictional requirement that the racketeering enterprise affect interstate commerce does not necessarily require the enterprise to be accompanied by an underlying economic motive. *Nat'l Org. for Women, Inc. v. Scheidler*, 510 U.S. 249, 257 (1994) (holding that the racketeering enterprise "need not have . . . an economic

---

[7] Petitioner contends that "[t]he Govt.—Mr. Parker, also used the court to instruct the jury on the law surrounding the 'RICO' federal Jurisdictional component element, but the defendant was never charged with §1962 statute when the grand jury returned the indictment . . . ." Petr.'s Motion at 8 (Doc. 494).

motive for engaging in illegal activity"). Indeed, in affirming petitioner's conviction, the Fourth Circuit made clear that a criminal enterprise need only have a "minimal" effect on interstate commerce for federal racketeering law to apply. *United States v. Lobo-Lopez*, 468 F. App'x 186, 191 (4th Cir. 2012). Thus, defense counsel's failure to object on this ground was objectively reasonable and, again, petitioner fails to meet *Strickland*'s first prong.

In sum, petitioner's contentions in grounds (1), (2), (3), and (6) of his motion to vacate fail to establish that his counsel's performance fell below an objective standard of reasonableness. To the contrary, the record reflects that defense counsel did not render ineffective assistance of counsel in any of the respects raised by petitioner. Accordingly, because petitioner does not satisfy the first prong of *Strickland* on contentions (1), (2), (3), and (6), the motion to vacate must be denied as to these grounds.

IV.

Petitioner further contends in ground (4) of his motion that his counsel were ineffective for failing to object to a constitutional defect in the superseding indictment.[8] Count Two of the superseding indictment charged petitioner with "unlawfully and knowingly murder[ing] Melvin Reyes ... in violation of the laws of the Commonwealth of Virginia, specifically, Va. Code. Ann. § 18.2-32," which defines first and second degree murder. Superseding Indictment at 6 (Doc. 24). Petitioner contends that the indictment was defective for failing to allege malice aforethought, a necessary element of murder.[9] Although the specific term "malice aforethought" is absent from Count Two, it is present in Count Three, which incorporates Count Two and states

---

[8] Petitioner also raises this same issue in part (c) of ground (3) of his motion.

[9] While the term "malice aforethought" is absent from the Virginia Code section defining murder, Virginia courts consistently hold that malice is "a requisite element for murder of any kind." *Essex v. Commonwealth of Virginia*, 228 Va. 273, 280, 322 S.E.2d 216, 219 (1984).

11

that "the defendants, with malice aforethought did unlawfully kill Melvin Reyes . . . ." *Id.* at 7. Because Count Three's statement on malice aforethought is explicitly in reference to the offense charged in Count Two, the indictment was not defective, and defense counsel were not ineffective in failing to object on these grounds. Moreover, the indictment sufficiently alleges the essence of "malice aforethought" in the grand jury's "Special Findings," which allege petitioner "intentionally" killed Reyes "after substantial planning and premeditation." *Id.* at 8.

Indictments must conform to the Fifth and Sixth Amendment guarantees (i) that no person can be prosecuted "for a capital, or infamous crime, unless on presentment or indictment of a grand jury," U.S. CONST. amend. V, and (ii) that the defendant in a criminal prosecution has a right "to be informed of the nature and cause of the accusation" against him, *id.* amend. VI. Accordingly, the Fourth Circuit has held that an indictment is sufficient if it (i) contains every essential element of the offense charged, (ii) fairly informs the defendant of the charge against which he must defend, and (iii) enables the defendant to plead an acquittal or conviction in bar of future prosecutions for the same offense. *United States v. Loayza*, 107 F.3d 257, 260 (4th Cir. 1997); *United States v. Darby*, 37 F.3d 1059, 1063 (4th Cir. 1994); *see also Russell v. United States*, 369 U.S. 749, 763–64 (1962).

Fairly read, the indictment plainly meets this standard. The grand jury's "Special Findings" with respect to Counts Two and Three adequately allege a mental state that necessarily establishes malice aforethought. Virginia defines "malice aforethought" as a killing committed "with a sedate, deliberate mind and formed design." *Essex v. Commonwealth*, 228 Va. 273, 280 (1984); *see also Osman v. Osman*, 285 Va. 384, 391 (2013) ("Malice, in a legal sense, means any wrongful act done willfully or purposefully."). Consistent with this definition, the indictment's "Special Findings" with respect to Counts Two and Three allege that petitioner "*intentionally*

participated in one or more acts, *contemplating that the life of a person would be taken*" and that he "committed the offense *after substantial planning and premeditation.*" Superseding Indictment at 8 (Doc. 24) (emphasis added). Further, although Count Two did not use the precise term "malice aforethought," that term is explicitly used in Count Three, which incorporates Count Two and charges that petitioner used a firearm to, "with malice aforethought, . . . unlawfully kill Melvin Reyes" in violation of 18 U.S.C. § 1959, "as set forth and charged in Count Two of this Superseding Indictment." *Id.* at 7.

Despite the absence of the precise words "malice aforethought" in Count Two, the indictment unquestionably (i) sets out the essential elements of the charge, (ii) gave petitioner unambiguous notice of the charges against which he had to defend, and (iii) would be sufficient for petitioner to plead double jeopardy in a subsequent prosecution. *United States v. Loayza*, 107 F.3d at 260. It is also important to note that the jury was properly instructed at length on the necessity of finding malice aforethought beyond a reasonable doubt. *See* Trial Tr. Apr. 21, 2009 at 88 (Doc. 424).[10] In sum, defense counsel were not ineffective in failing to object to the

---

[10] On this issue, the jury was instructed:

> First degree murder includes any willful, deliberate and premeditated killing. And the following constitutes first degree murder under the Code of Virginia, that is, a perpetrator killed the person, the killing was malicious, and the killing was also willful, deliberate and premeditated.
> Malice is the state of mind which results in the intentional doing of a wrongful act to another without legal excuse or justification, at a time when the mind of the actor is under the control of reason.
> Malice may result from any awful or unjustifiable motive, including anger, hatred or revenge. Malice may be inferred from any deliberate and cruel act against another, however sudden.
> Malice may be express or implied. Express malice is evidenced when one kills another with a sedate, deliberate mind and formed design.

13

adequacy of the indictment as the indictment fully meets the constitutional requirements of the Fifth and Sixth Amendments. Accordingly, petitioner does not satisfy the first prong of *Strickland* and thus the motion to vacate must be denied on this ground.

## V.

Petitioner further contends as ground (5) for his motion that his counsel were ineffective for failing to object to the government's use of hearsay testimony in violation of *Crawford v. Washington*, 541 U.S. 36 (2004). Specifically, petitioner points to, in his words, the "hearsay sideline testimony" of the prosecutor as the basis for his objection. Petr.'s Motion at 15 (Doc. 494). In other words, petitioner mistakenly labels the prosecutor's statements at a bench conference hearsay. This claim clearly fails, as statements made by counsel in a bench conference are not testimony and are not presented to the jury; they are merely argument. As there is no legal basis for the objection petitioner raises, defense counsel clearly were not objectively unreasonable for failing to object on this meritless ground and thus were not ineffective. Petitioner again fails to satisfy the first prong of *Strickland*, and the motion to vacate on this ground must be denied.

## VI.

Petitioner's final contention in support of his motion—ground (7)—is that his counsel were ineffective for failing to object to the restitution order in his sentence. Specifically,

---

> Implied malice exists when any purposeful, cruel act is committed by one individual against another without any or without great provocation.
> You may infer malice from the deliberate use of a deadly weapon unless, from all the evidence, you have a reasonable doubt as to whether malice existed. You may, but are never obligated to, find malice aforethought from the wanton and reckless indifference to human life. . . .

Trial Tr. Apr. 21, 2009 at 87–88 (Doc. 424).

petitioner contends restitution was impermissibly imposed on him because it was not specifically included in his indictment.[11] Plainly, however, restitution is a remedy courts may impose after finding that a defendant has committed a crime. It is not an element of the crime itself and need not be alleged in an indictment or found by a jury beyond a reasonable doubt.[12] As restitution for crimes of violence is authorized in 18 U.S.C. § 3663A(c)(1)(A)(i), its imposition in this case was lawful. Further, courts have repeatedly held that restitution may be imposed by the court without being presented to the jury, let alone charged in the indictment. *See, e.g.*, *United States v. Rattler*, 139 F. App'x 534, 536 (4th Cir. 2005). Accordingly, defense counsel was not ineffective in failing to object on this ground and petitioner does not satisfy the first prong of *Strickland*. The motion to vacate must be denied on this issue.

## VII.

Petitioner contends in the alternative that he should be granted relief on several of the above grounds because certain "recent U.S. Supreme Court decisions did not exist" at the time of his trial. Petr.'s Motion at 15 (Doc. 494). Specifically, he argues that new law exists that is relevant to (i) his ground (5) claim that the trial court allowed hearsay testimony that violated his Confrontation Clause rights per *Crawford v. Washington*, (ii) his ground (6) claim that the government needed to prove that his illegal enterprise had "an economy [sic] agenda," and (iii)

---

[11] Petitioner argues that the Supreme Court has held that restitution must be included in the indictment, but fails to provide a single case name or citation. A search discloses no such Supreme Court or indeed any federal court decision holding that restitution must be alleged in the indictment.

[12] Under the Victim Witness Protection Act, 18 U.S.C. § 3663, the sentencing court may impose restitution on defendants convicted of certain offenses. The court determines the amount of restitution by a preponderance of the evidence. *United States v. Henoud*, 81 F.3d 484, 490 (4th Cir. 1996).

his ground (7) claim that restitution was impermissibly imposed because it was not charged in the indictment.

These claims are baseless. First, as to ground (5), the Supreme Court's decision in *Crawford v. Washington* was issued in 2004 and thus significantly preceded petitioner's trial. More importantly, as discussed in Part V, *supra*, the statement to which petitioner objects does not constitute testimony, let alone hearsay, and let alone hearsay in violation of the Confrontation Clause. Second, as to ground (6), there has been no new decision on whether a criminal enterprise must have economic motives to be reached by federal racketeering law. The case petitioner cites in support of this ground, *United States v. Garcia*, 143 F. Supp. 2d 791 (E.D. Mich. 2000), is a district court case issued in 2000 without binding effect in this district. More importantly, as discussed in Part III, *supra*, a Supreme Court decision that significantly preceded petitioner's trial clearly holds that the criminal enterprise need not have an economic agenda. *Nat'l Org. for Women, Inc. v. Scheidler*, 510 U.S. 249, 257 (1994). That decision has never been changed or overruled. Finally, as to ground (7), petitioner argues that the Supreme Court's decision in *Alleyne v. United States*, 133 S. Ct. 2151 (2013), affects the legality of the restitution order included in his sentence. In *Alleyne*, the Supreme Court overruled *Harris v. United States*, 536 U.S. 545 (2002), and held that judicial fact-finding that increases the mandatory minimum sentence for a crime violates the Sixth Amendment. The restitution order was neither the product of judicial fact-finding nor did it constitute an increase of any mandatory minimum assessed against petitioner. As discussed in Part VI, *supra*, restitution for crimes of violence is authorized in 18 U.S.C. § 3663A(c)(1)(A)(i), and thus its imposition in this case was lawful.

Given that petitioner has failed to demonstrate the existence of any new law that affects the constitutionality of his conviction and sentence, his claims on these grounds must be denied.

## VIII.

In summary, petitioner has offered no persuasive reason to conclude that his trial and appellate counsel's performance was constitutionally inadequate or that a new rule of law promulgated since his sentencing exists that would affect the constitutionality of his convictions or sentence. Accordingly, his motion to vacate must be denied. It follows that his motions to obtain affidavits from his defense counsel and for an in camera review of the grand jury minutes must also be denied. (Docs. 500 and 501). In addition, his motion for a thirty-day extension of time to file his reply to the government's opposition to his petition is moot as petitioner responded to the government's opposition at length in his two motions (totaling seventy-eight pages) styled "Motion for Leave of this Court to Grant Pro Se Petitioner Two Different Requests [etc.]," (Doc. 500), and "Amendment to Clarify Mr. Lopez, Motion for Leave of this Court to Grant Pro Se Petitioner Two Different Requests [etc.]," (Doc. 501), filed long after the thirty-day extension requested.

An appropriate Order will issue.

Alexandria, VA
October 23, 2014

/s/
_____
T. S. Ellis, III
United States District Judge